FLORENCE E. EISENMAN

*vs.*

VIVIENNE I. AUSTEN, EXECUTRIX OF THE ESTATE
OF GEORGE L. ROGERS.

Cumberland.     Opinion, November 20, 1933.

*Chaplin, Burkett & Knudsen,* for plaintiff.
*J. W. Friedman,*
*Daniel Stone,*
*Frank P. Preti,* for defendant.

SITTING : PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

BARNES, J.   This case comes up on exception to direction of a verdict in favor of plaintiff, in an action on a negotiable promissory note, on demand, for $1,000.00, dated February 5, 1929, plaintiff payee, under her name at date of note, George L. Rogers maker.

By stipulation of counsel all steps precedent to collection of defendant as executrix were duly taken.

The defense is the general issue, with brief statement, setting up :

(1) Forgery.
(2) Fraud and undue influence in obtaining the instrument in suit.
(3) Lack of consideration.
(4) Denial of decedent's capacity to make a note.

At the outset of trial the defense of forgery was not available because defendant had not filed the affidavit required by Rule X of Rules of Courts. Early in the trial, however, plaintiff waived her advantage, and the defense of forgery had to be met.

Plaintiff produced the note ; had it marked for identification by the reporter ; introduced it, and rested.

Under the Negotiable Instruments Act, Chapter 164, R. S., "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration ; and every person whose signature appears thereon to have become a party thereto for value."

By the introduction of the note plaintiff made out a prima facie case.

The presumption of liability on the part of the maker whose signature appears on the note is complete, and the proof sufficient, until it is attacked and overthrown by convincing evidence.

Evidence to overthrow a mere presumption need be not more than slight, but it must be evidence of probative weight.

The burden of proving the signature not genuine or authorized, as well as lack of consideration for the promise to pay, is on the defense when the note, apparently regular, is introduced.

In the whole record there is no evidence of "fraud and undue influence in obtaining" the note.

And we find no evidence of lack of consideration.

There remains, therefore, to be determined, only this; is there evidence in the record, which should have been submitted to the jury, that would properly overthrow the presumption that George L. Rogers signed the note, and signed it at a time when his intellect was sufficient for him to intend to be bound by its terms?

At the date of the note Mr. Rogers was 67 or 68 years of age, living in an apartment in Portland with his daughter, the defendant, a copy-writer during the day, and teacher in a night school.

From the May previous he had been treated for arteriosclerosis, hardening of the arteries.

From May to August a nurse had attended to his wants. Dr. Blaisdell was consulted in August, and treatment was had in the Maine Eye and Ear Infirmary for about the whole of that month.

The patient improved and was treated by Dr. Blaisdell during the most of the next three months, until some day in November, when the doctor's engagement ended.

From the time Mr. Rogers was discharged from the Infirmary, until March 19, he was cared for by the plaintiff at the Portland apartment.

Mr. Rogers' distressing symptoms when he had attacks of what the witnesses call illness were nausea and dizziness, followed by vomiting. The doctor testified that such attacks would make his patient dizzy for from four to twenty-four hours, and the defendant testified her father had "peculiar mental lapses when he didn't know what he was saying or doing," as frequently as two or three times a fortnight. From testimony of the daughter and nurse we learn that during the first weeks of 1929 Mr. Rogers was dressed, walked about the apartment with his nurse's help, and was satisfied with the care given him by the plaintiff.

He had the nurse write letters for him, and in the last days of his illness the plaintiff testified that her father cautioned her to be sure and pay certain bills if anything happened to him.

On the other hand defendant testified that her father's handling of knife, fork and spoon was so uncertain that she handled these utensils during his meals, and the nurse of the summer before gave the same story.

Defendant further testified that her father signed no checks

from the summer of 1928 until he died; that she signed for him, at his request, during this whole period, and that the signature on the note in suit was a forgery.

With the testimony in this state, defendant called the plaintiff to the witness stand.

She testified to her employment from August 27, 1928, till the death of decedent, on May 3, 1929; that Mr. Rogers "was quite a care," but that from November until the latter part of March he had none of the attacks of dizziness and vomiting described by others; that he was intelligent, had visitors and talked with them, and conversed with her.

She testified that Mr. Rogers signed the note in her presence and in the presence of Mrs. Hodgkins, the latter witnessing his signature.

Against this ·positive testimony defendant arrayed thirty-seven checks of sixty-three from her father's check book, if all were numbered seriatim, issued from August 29, 1928, to February 11, 1929. In the main these checks were written by defendant and signed by her "George L. Rogers, VR."

Defendant's contention that during this period her father did not sign and could not sign a check would have been aided if twenty-six other checks, which must have been used, destroyed, spoiled or left in her father's check book, had been exhibited to the jury or accounted for.

The checks signed by defendant proved nothing, except that she had written them. A sufficient number of her father's checks, signed by him in previous years were introduced to prove the father's signature. To an unprejudiced eye they prove much more. The unvarying peculiarities of the father's signature appear in his name as it is written on the note in question. True, the note is signed "George L. Rogers," while the checks signed by the father and introduced in evidence are signed in abbreviation, or generally "G. L. Rogers." That the full name was signed, on a note as large as this in suit, would not prove that a man who signed his name on checks by initials would not sign the note as we find it.

The defendant testified that she knew nothing of the note until after her father's funeral. She said at the trial the signature was a forgery. But in late July, 1930, she wrote this letter to the

plaintiff in regard to paying the note she now claims to be a forgery:

"Dear Mrs. Eisenman:

An explanation is due you, I feel, in regard to my delay in the payment of the note. I have been intending to write you for sometime, but kept putting it off with the hope that I might be able to bring about a settlement.

The facts of the matter are these. After paying the funeral expenses, etc. subsequent to my father's death there was not cash enough left to meet the note. I made every effort to sell our home in Pittsfield, but was unsuccessful. Two other pieces of property upon which my father held mortgages will not come into my possession through foreclosure until next February. So you see I am tied up right now as far as raising the money through the sale of property is concerned.

I tried to borrow a thousand dollars from the Pittsfield National Bank on the security of the house in Pittsfield, but they informed me that they were not lending any money on real estate there at the present time. I have also tried other sources for a loan, but without success so far.

Next spring, when the property becomes mine to sell, I shall dispose of it, by auction if necessary. Therefore if you would grant me an extension of time, it would help matters greatly. I would, in this case, give you my own note in place of my father's.

This is my position. I am very sorry it has happened this way, but you can see how impossible it has been and is for me to make the payment at the present time. Had I been able to sell our home, the payment would have been made long ago.

Sincerely,

Vivienne"

When defendant called the plaintiff to the witness stand, the latter testified as to the consideration for the note.

Asked about an occurrence, and Mr. Rogers' conversation, on a morning before the signing of the note, plaintiff said,

"I went in one morning, and he had a bowel movement in his clothes . . . I was cleaning him up, and I gave him a bath that

morning, and he says, 'I guess you won't want to be staying with me if this happens very often.' I said, 'No, Mr. Rogers, because I am working here for less than I have ever nursed and,' I said, 'I don't think I will stay.'

And after a time . . . he seemed to be in a deep study, seemed to be thinking . . . he says, 'Would you tell me that you would stay here with me as long as I live if I gave you a thousand dollars?'

I said, 'You couldn't do that Mr. Rogers.' I said, 'What would Vivienne say?' He said, 'It is none of Vivienne's business,' he said, 'this money is mine.'

And he said, 'Would you stay if I would give you a thousand dollars?' And I said, 'Yes, I will tell you, I will stay with you as long as you live.' "

She took him to her home and cared for him in his helplessness, till he died.

Plaintiff was the last witness called by defendant, who rested when she left the stand.

The taking of evidence was ended; the plaintiff's counsel move for a directed verdict, and the Justice granted it.

Defendant's counsel appears, in his argument, to claim that he was deprived of the opportunity to produce evidence to contradict his witness, the plaintiff.

Not so. At the close of plaintiff's testimony, he notified the Court that the testimony was closed.

With the testimony before him no other course was open to the Justice but to grant plaintiff's motion.

Our Court has said, "Each case of this nature must be decided upon its own peculiar facts. Upon the facts proven before us it is our conclusion that the ruling of the presiding Justice directing a verdict for the plaintiff was justified, because a verdict for the defendant although rendered by a jury would have been so lacking in substantial basis, either of fact or of proper inferences from proven facts, that it could not have been allowed to stand." *Savings Bank* v. *Berry*, 119 Me., 410, 111 A., 53, 536.

*Exception overruled.*